**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**NORTHERN DIVISION**

WILLIAM J. LANG LAND
CLEARING, INC.,

    Petitioner,

v.

ADMINISTRATOR, WAGE & HOUR
DIVISION, U.S. DEPARTMENT OF
LABOR, and ADMINISTRATIVE
REVIEW BOARD, U.S.
DEPARTMENT OF LABOR,

    Respondents,
_____/

CASE NUMBER: 04-CV-10336-BC

DISTRICT JUDGE DAVID M. LAWSON
MAGISTRATE JUDGE CHARLES BINDER

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
**ON CROSS MOTIONS FOR SUMMARY JUDGMENT**
(Dkts. 18, 19)

## I.    RECOMMENDATION

**IT IS RECOMMENDED** that Respondents' Motion be **GRANTED** and Petitioner's Motion be **DENIED** with respect to:

1) fringe benefits characterized by Petitioner as vacation payments,

2) food and lodging (subsistence) payments characterized by Petitioner as fringe benefits, and,

3) the method Petitioner used to calculate health insurance fringe benefits.

**IT IS FURTHER RECOMMENDED** that Respondents' motion be **DENIED** and Petitioner's Motion be **GRANTED** with respect to the classification of power equipment operators.

**II.    REPORT**

    **A.    Introduction**

By order of U.S. District Judge David M. Lawson, pretrial matters were referred to the undersigned Magistrate Judge on February 28, 2005. (Dkt. 7.) The instant motions were filed and briefed between July and September of 2005. (Dkts. 18-28.) Pursuant to E.D. Mich. LR 7.1(e)(2), the motions are ready for Report and Recommendation without oral argument.

William J. Lang Land Clearing, Inc. ("Lang"), is a construction contractor located in Beaverton, Michigan, who specializes in land clearing operations. Lang performed land clearing work as a subcontractor for five different prime contractors on six contracts that received federal funds. Over the course of two years, Lang employed a total of 22 employees on the six contracts at issue in this case. In 1996, the United States Department of Labor, Wage and Hour Division ("Administrator") investigated Lang's practices regarding their obligation to pay prevailing wages under the Davis-Bacon Act, 40 U.S.C. § 3141-3148, and the following related acts: Federal-Aid Highway Act , 23 U.S.C. § 101; the Airport and Airway Improvement Act, 49 U.S.C. § 47112(b); Reorganization Plan No. 14 of 1950, 5 U.S.C. App.; the Contract Work Hours and Safety Standards Act, 40 U.S.C. § 3701-08; and the related regulations including 29 C.F.R. Part 5.

    **B.    Procedural History**

As a result of its investigation, the Administrator began administrative proceedings against Lang Land. A hearing was held before the Administrative Law Judge ("ALJ") Daniel Roketenetz on May 18-20, 1999, in Midland, Michigan. (Administrative Record ("R.") 1727.) On February 22, 2001, the ALJ issued an Order ruling against the Administrator on all issues except one. (R.

1722.) Specifically, the ALJ found that Lang had wrongfully taken fringe benefit credit for bonus payments that Lang had improperly characterized as vacation payments. (R. 1745-46.)[1]

Appeal was taken to the Administrative Review Board ("Board") which issued its decision and order on September 28, 2004. (R. 1998.) The Board found that Lang had: 1) wrongfully taken fringe benefit credit for bonus payments that Lang had improperly characterized as vacation payments (R. 2008)(affirming the ALJ); 2) improperly taken prevailing wage credit by treating subsistence payments as fringe benefits (R. 2009-13)(reversing the ALJ); 3) improperly taken prevailing wage credit by averaging health insurance costs instead of calculating the actual amounts paid per employee per month (R. 2017)(reversing the ALJ); and 4) erroneously classified its power equipment operations as Group 4 rather than the higher paid Group 1 (R. 2028)(reversing the ALJ.)

**C.    Law and Analysis**

**1.    Standard of Review**

**a.    Motion for Summary Judgment**

A motion for summary judgment will be granted under Rule 56(c) where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). All facts and inferences must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case.

---

[1] The ALJ did not find that Lang had: 1) improperly taken prevailing wage credit by treating subsistence payments as fringe benefits, or 2) improperly taken prevailing wage credit by averaging health insurance costs instead of calculating the actual amounts paid per employee per month, or 3) erroneously classified its power equipment operations as Group 4 rather than the higher paid Group 1.

*Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (citing *Celotex Corp. v Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). In determining whether the moving party has met its considerable burden, a court may consider the plausibility of the moving party's evidence. *Matsushita*, 475 U.S. at 587-88. Summary judgment is also proper where the moving party shows that the non-moving party is unable to meet its burden of proof. *Celotex*, 477 U.S. at 326.

  **b.**  **Review Under the Administrative Procedures Act ("APA")**

Under the APA, judicial review of the Board's decision is limited to whether the Board's decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law, . . . [or is] unsupported by substantial evidence." 5 U.S.C. § 706(2); *R.R. Ventures, Inc. v. Surface Transp. Bd.*, 299 F.3d 523, 547 (6th Cir. 2002).

However, where, as here, there are "conflicting views expressed by the Administrator and the members of the Board, we cannot simply defer to the result reached by the Board. Judicial review requires a court to evaluate the reasoning of the administrative agency." *Miree Constr. Corp. v. Dole*, 930 F.2d 1536, 1541 (11th Cir. 1991).

  **2.**  **Discussion**

The Davis-Bacon Act, 40 U.S.C. § 276a, applies to federally funded contracts and provides that all mechanics and laborers employed directly on the work site shall be paid the local prevailing wages for their individual job classification as determined by the Secretary of Labor. 40 U.S.C. § 3142(b); 23 U.S.C. § 113; 23 C.F.R. § 633.102. The Department of Labor monitors compliance by requiring contractors and subcontractors to submit weekly payroll records to them. 29 C.F.R. § 5.5(a)(3). "The dual purposes of the Act are to give local laborers and contractors fair opportunity to participate in building programs when federal money is involved and to protect

local wage standards by preventing contractors from basing their bids on wages lower than those prevailing in the area." *L.P. Cavett Co. v. U. S. Dep't of Labor*, 101 F.3d 1111, 1113 (6th Cir. 1996). An employee's wage is the total of all cash wages and non-cash fringe benefits paid by the employer to the employee. 40 U.S.C. § 276a(b).

### a.      Bonus or Vacation Payments

The applicable regulation provides:

> Contributions made or costs reasonably anticipated for bona fide fringe benefits under section 1(b)(2) of the Davis-Bacon Act on behalf of laborers or mechanics are considered wages paid to such laborers and mechanics...also, regular contributions made or costs incurred for more than a weekly period (but not less often than quarterly) under plans, funds, or programs which cover the particular weekly period, are deemed constructively made or incurred during such weekly period.

29 C.F.R. § 5.5(a)(1)(i).

Lang explains that it began paying vacation payments to its employees several times a year to make up for any wage deficiencies it may have otherwise had on any given federal project. (Pet'r's Br., Dkt. 19 at 43-44.) The payments were made on July 13, 1995, August 3, 1995, and December 29, 1995. (Resp't's Br., Dkt. 18 at. 11.) Lang contends that the Board elevated form over substance because the payments were referred to as "bonuses" even though they were made to comply with the prevailing wage rules and should be credited as such. (*Id.*)

The Agency counters by noting that the payments cannot be categorized as vacation pay fringe benefits because they were not made on a quarterly basis as required by 29 C.F.R. § 5.5(a)(1)(i) and that the payments cannot be deemed cash payments in lieu of benefits because the payments were not made on a weekly basis nor were they calculated at an hourly rate as required by 29 C.F.R. § 5.5(a)(1)(i). (*Id.*)

In *Mistick & Sons, Inc. v. Reich*, 54 F.3d 900, 903 (D.C.Cir. 1995), Mistick made irrevocable weekly contributions to a fringe benefit plan ("FBP") from which the employee could

5

withdraw monies to pay for any of the benefits listed in the FBP and which was completely available to the employee upon termination of employment. The amount contributed for each employee was the difference between the prevailing wage and the wage paid to the employee, i.e., the amount was the amount needed to comply with the prevailing wage requirements. Although the Administrator held that these payments were not bona fide fringe benefits because the amount contributed did not reasonably relate to the actual costs to provide benefits to the employees, the circuit court disagreed. The D.C. Circuit held that the "one-to-one ratio between employer contributions on behalf of an employee and value received by the employee cannot be deemed unreasonable." *Mistick*, 54 F.3d at 904. In addition, the court rejected the Department's argument that the contributions were not bona fide because although the employee eventually received the full value of the employer's contribution, the employee did not receive the benefit at the time of his Davis-Bacon work. Instead, the court held that since the "statute expressly allows irrevocable contributions to a 'fund, plan, or program,' and thus necessarily permits an arrangement by which an employee does not receive every dollar he earns for Davis-Bacon work at the time he earns it," Mistick's FBP program sufficiently complied with the Act. *Id.*[2]

Similarly, in the instant case, I suggest that the payments were made to comply with prevailing wage requirements, and there was a one-to-one ratio between the contributions made by Lang and the benefit received by Lang's employees. Additionally, here, as in *Mistick*, receipt of the benefit was, at times, delayed from the work performed. The similarities end, however, at regularity of payment. In *Mistick*, the contributions were made in the form of irrevocable weekly contributions to the FBP. Lang, however, made payments on an irregular basis, in July, August,

---

[2]Nor was the court persuaded to hold otherwise based on the Department's argument that the FBP plan was not traditional or that the FBP plan subsidized non-Davis-Bacon work because the contributions were not linked to actual cost of enumerated benefits. *Mistick*, 54 F.3d at 904.

and December. Therefore, Lang's payments do not qualify as vacation pay fringe benefits under 29 C.F.R. § 5.5(a)(1)(i)(quarterly) nor do they qualify as cash payments in lieu of benefits under 29 C.F.R. § 5.5(a)(1)(i)(weekly). Accordingly, I suggest that the Agency's motion for summary judgment should be granted and Lang's motion denied on this ground.

      **b.**     **Food and Lodging Payments**

Under the applicable regulations, an employer may make payroll deductions without prior approval from the Secretary of Labor for wages and cash that the employee has "complete freedom of disposition" of and for "the 'reasonable cost' of board, lodging or other facilities meeting the requirements of . . . part 531of this title...[and] when such a deduction is made the additional records required under 516.25(a) of this title shall be kept." 29 C.F.R. §§ 3.5(b) and (j), respectively. The regulations also provide that "[w]hile each situation must be separately considered on its own merits, payments made for travel, subsistence or to industry promotion funds . . . which are common in the construction industry . . . should not normally be regarded as bona fide fringe benefits . . ." because they are omitted from reference in the Act. 29 C.F.R. § 5.29(f).

Lang believes that it properly took credit for payment of meals and lodging expenses of its operators as a bona fide fringe benefit or cash payments that can be credited toward the hourly rate of each employee. The Agency responds that there was no proof that meals and lodging are customarily considered fringe benefits in the industry. (Resp't's Br., Dkt. 18 at13-14.) The Agency adds that meals and lodging were also not creditable as cash payments in lieu of prevailing wage obligations because they were not customarily furnished by Lang to its employees. (*Id. at* 14-17.)

The Agency Handbook provides:

Where an employer sends employees who are regularly employed in their home community away from home to perform a special job at a location outside daily

7

> commuting distances from their home so that, as a practical matter, they can return to their homes only on weekends, the assumption by the employer of the cost of board and lodging at the distant location, not customarily furnished the employee in their regular employment by the employer, and of weekend transportation costs of returning to their homes and reporting again to the special job at the end of the weekend, are considered as payment of travel expenses properly reimbursable by the employer and incurred for its benefit. Such payments are not considered bona fide fringe benefits within the meaning of the [Davis-Bacon and Related Acts], are not part of the employees' wages, and do not constitute board, lodging or other facilities customarily furnished which are deductible from the predetermined wage pursuant to [29 C.F.R.] 3.5j.

Administrator's Field Operations Handbook "FOH," Section 15f18. Lang argues that the instant facts do not present special circumstances under which room and board cannot be considered fringe benefits.

According to Mr. Lang, when speaking with potential employees, he made it "very clear to them that you [sic] will be gone all week and home only on weekends." (R. 48.) Employee testimony confirmed that they were to stay at a motel chosen by Lang during the work week (5 or 6 days) and could not return home until the weekend. (R. 62, 92, 114,132, 167-68, 187.)

In *In the Matter of Calculus, Inc.*, No. 93-06, 1993 WL 537381 (DOL W.A.B. October 29, 1993), the employer ("Calculus"), required that its employees accept lodging during the work week so they could begin at 7 o'clock a.m. each day. Calculus gave each employee a per diem amount in addition to ordinary wages to cover food and lodging expenses. The ALJ concluded that Calculus had not underpaid its workers because Calculus was not obligated to pay the per diem amount it did its employees for food and lodging and because the employees received the same amount of money that they would have received had the total been called wages rather than per diem additions to wages. The Wage Appeals Board reversed, concluding that the per diem amount paid for food and lodging could not properly be credited toward the prevailing wage requirements because "Calculus did not customarily furnish board and lodging to its employees,

8

but did so only on the contract involved in this case." *Id*. at 3. In addition, the Board noted that Calculus had failed to maintain additional records as required when food and lodging are "customarily provided" to the employees. *Id*.; 29 C.F.R. § 516.27. Finally, the Board concluded that since the employees had no choice but to stay at the work site all week and thus, accept the per diem in lieu of wages, the room and board were for the benefit and convenience of Calculus. *Id*. at 4.

After review of the record in this case, I cannot say that the Board's conclusion that the "facts in *Calculus* precisely mirror those presented by Lang" (R. 2016) is arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law, nor can I say it is not supported by substantial evidence. Accordingly, I suggest that the Agency's motion for summary judgment should be granted and Lang's motion denied on this ground.

    **c.**     **Health Insurance Benefit Calculation**

"In determining cash equivalent credit for fringe benefits, the period of time to be used is the period covered by the contribution." (FOH, 15f11(a).) The Board determined that Lang should have calculated the health insurance fringe benefit individually and on a monthly basis because Lang paid for that coverage on a monthly basis and at varying rates. Instead, Lang calculated its health insurance fringe benefit by taking the annual health insurance cost in the previous year, divided by the number of hours worked in an employee classification in that year, to arrive at a cost per hour for each classification. (Resp't's Br., Dkt. 18 at17.)

Lang reasons that the Board's method is not reasonable because the true value of the insurance coverage is not related to the number of hours worked; rather, it has independent value based on the actual coverage the employee receives. Lang further points out that the Board's method would lead to the irrational result where the value of the fringe benefit would be very low

9

in months that the employee worked the most hours and correspondingly high in months where the employee worked the least amount of hours. (Pet'r's Br., Dkt. 19 at 36-37.) Lang cites *Mistick*, *supra*, and *Miree*, *supra* in support of its position. However, while both of these cases considered annualization of benefits, neither of these cases dealt with health insurance costs. *Mistick* involved cash contributions made into a fringe benefit plan and *Miree* involved apprenticeship training costs. Consequently, neither of these cases, I suggest, are persuasive on the present question.

The Agency argues that using Lang's methodology, "single-insured employees received less than the prevailing wage because the average rate overstated the cash value of their insurance benefit." (Resp't's Br., Dkt. 18 at17.) The Agency adds that Lang's method would also inaccurately take credit for contributions made for employees during the waiting period when they are not eligible where no contribution was actually made. (*Id*. at 18-19.) This is prohibited by the Field Handbook at 15f12.

Although both parties have posed interesting analyses of the advantages and disadvantages of the various methodologies, I believe the issue is resolved by reference to section 15f11(d) of the FOH which provides:

> In computing cash equivalents, it should be kept in mind that under certain kinds of fringe benefit plans the rate of contribution for employees may vary. For example, under a hospitalization plan, the employer often contributes at different rates for single and family plan members. In such situations, an employer cannot take an across-the-board average equivalent for all employees; rather, the cash equivalent can only be credited based on the rate of contribution for each individual employee.

Since Lang did not distinguish between single and family plan members in its across-the-board computation, Lang failed to properly calculate its fringe benefit according to Agency policy. Consequently, I suggest that the Agency's motion for summary judgment should be granted and Lang's motion denied on this ground.

### d.     Classification of Power Equipment Operations

Lang originally cleared mostly farmland and forests and primarily used bulldozers to perform that work. As a result, Lang's operators were classified under Group 1 in the early 1970s and 1980s. (Pet'r's Br., Dkt. 19 at 3.) Since then, the demand for clearing farmland has waned, and Lang has focused more on clearing land around roads and highways which caused Lang to retool its operations. (*Id*.) Lang keeps a couple bulldozers as a backup for other equipment, and for retrieving equipment that gets stuck. The remainder of its equipment is forestry harvesting equipment. (*Id*. at 3-4.) Specifically, Lang points to a Morbark Waste Recycler (also referred to as a "tub grinder"), hydro-axes (with mower attachments, generally the first piece of equipment used to clear land), skidders (which are used to drag bundles of trees or skids to a chipper), chippers, and wheel grinders that Mr. Lang invented (which have replaced the tub grinders and which can grind a stump in place without having to uproot it). (*Id*.)

Generally, earth moving, highway construction and paving equipment operators are Group 1 operators, while farm, trucking and forestry equipment operators are Group 4. Lang contends that its equipment is virtually all forestry equipment; thus, Lang properly categorized its operators at Group 4. Lang relies on the fact that the Group 4 classification properly applies to "all mulching equipment" and "stump removers." (*Id*. at 5; R. 1001, 1234, 1489.)

Lang correctly notes that Group 4 expressly includes "all mulching equipment" and "stump removers" and that Group 1 does include operators of equipment that is used for highway and paving projects. For example, Group 1 includes "asphalt plant operator(s), crane operators(s), . . . paver operator(s)(5 bags or more), elevating grader operator(s), pile driving operator(s) . . ." (R. 1001, 1234, 1489.)

The Agency makes the threshold argument that classification of power equipment is a wage determination that is not subject to judicial review, *citing Universities Research Ass'n v. Coutu*, 450 U.S. 754, 761 n.10, 101 S. Ct. 1451, 67 L. Ed. 2d 662 (1981); *United States v. Binghampton Constr. Co.*, 347 U.S. 171, 177, 74 S. Ct. 438, 98 L. Ed. 594 (1954); and *Mistick PBT d/b/a Mistick Construction v. Chao,* No. 03-1767, 2004 WL 3517425 (D.D.C., July 27. 2004). (Resp't's Br., Dkt. 18 at 19-21.) *Universities Research Ass'n*, *supra*, does state that the correctness of wage determinations is not subject to judicial review, *supra*, n.10, but holds only that the Davis-Bacon Act confers no private right of action for back wages. The case expressly states, "we find it unnecessary to reach the broader question whether federal courts have any jurisdiction to review agency coverage and classification decisions." *Universities Research Ass'n*, 450 U.S. at 768. There have been several district court opinions that have held that the classification of workers is a wage determination that is not subject to judicial review, including *Mistick PBT*, *supra*, cited by the Respondent Agency. *See also George Campbell Painting Corp. v. Chao*, No. 3-05-cv-00716, 2006 WL 197375 (D. Conn. January 25, 2006), and cases cited therein.

"Federal courts may, however, review the Secretary's wage determination for violation of due process or statutory or regulatory violations." *Id..* at 13; *accord Fry Bros. Corp. v. The Dep't of Housing and Urban Dev.*, 614 F.2d 732, 733 (10th Cir. 1980)(finding plaintiff failed to sufficiently raise due process issue where the phrase was only mentioned in one paragraph noting the difference between the government's method of calculation and the plaintiff's own). Lang has not challenged the classifications based on due process grounds. On the other hand, both parties have presented and briefed the issue at all levels of administrative review, and to this Court. In addition, the APA confers upon this Court the obligation to independently review the Administrator's decisions. For these reasons, and for the sake of judicial economy on review, I

12

will presume for the purposes of this analysis that the Court possesses the authority to review this determination of the Administrator.

The Agency argues that the Board's decision was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. (Resp't's Br., Dkt. 18 at 21.)[3] I suggest that the Board's decision, in rejecting that of the ALJ, was arbitrary, capricious or an abuse of discretion.

The ALJ noted that the witnesses offered by the Agency testified that the equipment used by Lang should be classified as Group 1 but that they offered no consistent theory to support that conclusion. (R. 1737.) Four witnesses (Swartz, Hamilton, Hart, and Fox) opined that size, weight and power were the key factors to determine the proper classification. (*Id*.) Three of these four joined another two in proffering that the most important factor was the skill of the operator. (*Id*.) On cross-examination, many of these same witnesses conceded that some of the equipment in Group 4 is larger in size and power than those in Group 1, thereby defeating their own rationales. (*Id*.) Finally, the ALJ noted that the plain language of the categories themselves supported Lang's conclusion that its equipment fit into Group 4.

Group 4 expressly includes "all mulching equipment" and "stump removers" which by its ordinary meaning covers the forestry clearing equipment used by Lang, such as the skidders, chippers, and wheel grinders. (R. 1001, 1234, 1489, 1738.) The ALJ also noted that although

---

[3]Since this Court's review is limited, the burden of proof argument is not, I suggest, of overriding importance. However, I note that although Lang cites *Trataros Construction Co., Inc.,* 94 1 B.C.A. (CCH) P26,592, 1993 ABSCA LEXIS 500, as support for its position that the "Administrator at all times bears the burden of proving her contention that Lang improperly categorized its equipment operators," (Dkt. 19 at 6), *Trataros* actually states the opposite: the "burden of proof is on the Appellant [Trataros] to establish that its proffered 'or equal' functions as well in all the essential respects as the specified product." *Id.* at 11; *accord Hook Constr., Inc. v. General Servs. Admin.*, 2005-1 B.C.A. (CCH) P32,862, 2005 GSBCA LEXIS 4 (if contractor cannot make required showing, agency not liable for rejecting proposed product).

13

Lang occasionally used bulldozers, which are classified as Group 1 equipment, such use was sporadic. The ALJ concluded that occasional use of a Group 1 piece of equipment would not justify raising the classification of the operators who used Group 4 equipment 95% of the time. (R. 1738.)

The Board's conclusion to the contrary is based on the fact that the Local 324 representatives' testimony consistently concluded that Lang's equipment should be considered Group 1 under local practices. (R. 2023.) The Board apparently was not disturbed by the fact that the theories behind the conclusion were not consistent and that the main theory was internally flawed. For instance, the Board found no fault in the testimony that Lang's equipment must be Group 1 because it is powerful and large even though those same witnesses admitted that some equipment in Group 4 was larger and more powerful than those in Group 1. (R. 2023.) The Board dismissed this problem by noting that the inconsistent examples represented only a small number of pieces of equipment. (R. 2023.)

The Board also relied on testimony that Lang's stump grinder was not the same as a "Group 4 'stump grinder,'" because the "Group 4 'stump grinder'" is a "very, very small one." (R. 2026.) However, if a contractor cannot be sure that a "stump grinder" means a "stump grinder," then the Agency is acting in an arbitrary manner, and its actions cannot be sustained. Accordingly, I suggest that Lang's motion for summary judgment should be granted and the Agency's motion denied on this ground.

### III. <u>REVIEW</u>

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §

636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *See Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

                                                s/ *Charles E Binder*
                                                CHARLES E. BINDER
Dated: March 28, 2006                     United States Magistrate Judge

### CERTIFICATION

     I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on Janet L. Parker, Mark D. Sassak, Kraig M. Schutter and Honorable David M. Lawson.

Dated: March 28, 2006                                   By      s/Mary E. Dobbick
                                                                      Secretary to Magistrate Judge Binder